We're going to proceed with the 1130 case, People v. Brett Nollman. Let's see, Mr. Andrews and Ms. McClain. All right, Mr. Andrews, please proceed. I'm Alan Andrews from the Office of the State Appellate Defender representing Mr. Nollman in this case. I'm going to focus on the second issue, but briefly on the first issue. The state presented copious amounts of evidence of uncharged offenses in this case, evidence of an aggravated battery that occurred three years before the charged offense, evidence of a burglary the morning of the charged offense, evidence of arguably a failed forced entry the morning of the offense, and evidence that Mr. Nollman was in a brawl with different family members the day of the charged offense. The case law teaches us that the danger of uncharged offense evidence is that it prompts the jury to convict people based on emotions rather than upon the evidence concerning the charged offense, and that's what happened here. You know, the evidence painted Mr. Nollman as an extremely unpleasant individual, and some of the emotional words used in the case law, you know, explaining the prejudice are words like hatred and contempt, and all this evidence did nothing but make the jury hate and feel great contempt for Mr. Nollman. As for the second issue, it's evident that Mr. Nollman's mother loved him very much. She was called as a witness by the state and undermined the state's case against Mr. Nollman. As a result of that, the state decided that they wanted to present prior inconsistent statements from his mother, statements she'd made in a recorded interview by the police, and there was nothing wrong with presenting the prior inconsistent statements as substantive evidence. The problem occurred when the state refused to edit the 100-minute recording and when it, in fact, played the 100-minute recording to the jury, because that exposed the jury not just to the admissible prior inconsistent statements, but to many consistent statements that bolstered Ms. Neely, that's Mr. Nollman's brother, bolstered Ms. Neely's testimony, and then even worse, I think, to a lot of information that they'd never heard because Ms. Neely had never even been asked about it at trial, but it came out when they played the tape of the recording. And the error in this case was completely avoidable. There was absolutely no reason why the state had to play the entire 100-minute recording. At trial, the state's attorney said, I can't edit this. Your objection is untimely, and the judge agreed. But the objection absolutely was not untimely. It was made as soon as possible after Ms. Neely testified. There was no sooner time to object because counsel had to hear Ms. Neely testify to know whether anything was inconsistent and what was inconsistent and what would need to be edited out of the tape, the recording. I'm so old, I think everything's a tape. But in any event, it could not possibly have been made any earlier. On appeal, the state raises a related argument, citing cases that hold that it's okay to deny motions in limine because they're untimely. But I would point out that those cases held premature motions were untimely, and it's ironic because that's really what the state wanted Mr. Nollman's attorney to do in this case, was to file a premature motion in limine. They said it's too late to wait until after Ms. Neely testified. You should have filed it earlier. But had he filed a motion in limine before she testified, the judge couldn't possibly have ruled on it. The judge wouldn't have known whether anything was inconsistent, what was inconsistent, or anything. And the judge himself said that the whole thing came down to observing Ms. Neely testify. So the argument that it was untimely and that the motion should have been filed sooner, just simply they don't hold water. And the error was unnecessary also because there was no reason to play the recorder. Ms. Neely had signed a written statement that the detective had prepared while she was talking to him, signed each and every page of it, so it's admissible under the statute, you know, for prior inconsistent statements. And the state simply could have had the detective testify about the inconsistent portions of the written statement without having, she could have read from the statement without having to have him play the entire recording, 100 minutes that contained prior consistent statements and new prejudicial evidence that the jury had never heard. And I would argue further that any difficulty the state would have had in editing the recording is just absolutely irrelevant. The state's the proponent of the evidence, these prior inconsistent statements that it wants to admit as substantive evidence. As a proponent, it had the duty, the burden, however you want to phrase it, to present its evidence in an admissible form. You know, I haven't seen any cases where it says it's okay to present a lot of inadmissible evidence because it would be a lot of trouble to cut it out. It's just, it's absolutely irrelevant. The state was the proponent. They can't get away with presenting a boatload of inadmissible evidence because they didn't feel like editing a recording. The state has cited a couple cases on appeal that say you don't have to take every consistent or inadmissible statement out of a statement that's being admitted as a prior inconsistent statement of substantive evidence. You know, what those cases are really saying is that it can be harmless error to have some inadmissible stuff in a statement. And I think that's obvious. I don't disagree with it can be harmless error, but it's not in this case. I don't think I stressed enough in my brief that Mr. Neely has, Mr. Nolman, has a plausible defense in this case. To convict him of attempt home invasion, which is the only crime we really care about here, the state had to prove that while he's attempting to break in, he intended to harm either his stepfather or his mother. Now, certainly there's evidence from which the jury could have found that he did, but there's plenty of evidence from which the jury could have concluded he had no intention of harming anybody. The state presented evidence that he's drunk. You know, he may have been on drugs. You know, the evidence could show that Mr. Nolman is really just a rather unpleasant blowhard. He's frustrated. They won't let him in the house. They haven't let him in the house all day. He's screaming threats because he stupidly thinks the way to get somebody to open the door is to threaten them. And the jury could just conclude that he's all hot air. So I'm not arguing that Mr. Nolman is innocent. I'm just saying he's got a plausible defense in this case. And then the first one in my memory, was the jury given a special instruction in regard to disregarding parts of this take? As I recall, they were told they could use the prior inconsistent statements of substantive evidence. There was no instruction on what to do with any consistent statements. There was no instruction concerning what to do with the new evidence. And the judge even refused to give an instruction on the bath salts before trial. One of the things that was revealed was that they thought Mr. Nolman was smoking bath salts. And the judge had ruled that was inadmissible. But he won't even give a limiting instruction on that after they played the recording because he was. Which was hinted by the defendant at the instruction conference? He asked for it. I don't remember if he actually tendered it. The judge just refused saying that he thought it would be the affirmative defense of voluntary intoxication. Which, of course, is no longer an affirmative defense. Were bath salts illegal at the time? I don't know whether they were illegal or not. Because I thought that was fairly recent that they've. I couldn't answer that. But this offense is just a couple years old. You know, 2012. But even if they weren't illegal, it's evidence that the jury hadn't heard. It's new evidence. And whether or not it's evidence of another crime doesn't really matter. They hadn't heard anything about bath salts. But it's presented in the context that it's a drug and he's whacked out on it. And that's why he's committing this crime. So whether or not it was illegal, it's still prejudicial new evidence. Didn't he have some type of paraphernalia on him when he was apprehended? Yes. The police officer took a crack pipe off, which he testified is something that can be used to smoke drugs. You know, which implied he might have been smoking bath salts with this pipe that he had on him. And he was never charged with possessing a crack pipe or any kind of drugs. But, you know, as I mentioned in context of the first issue, one of the problems you have is the jury's convicting people from hatred or contempt rather than upon the evidence the state presented about this attempt home invasion. And what you've got here is a lot of evidence showing that Mr. Goldman torments his family. And worse than that, he torments his family because he's an alcoholic and a drug user. He voluntarily does this, and he's out of control. How many years was he in prison? He was out there 17 days after that. He was in for a couple years roughly. He got out, violated his MSR, was sent back, and got out 18 days before this. And he was in there precisely for harming the boyfriend. Yeah, exactly. But the point there is it's really not very probative because he had all of this time, the 18 days and the time he was on MSR, and because it's speculative because, you know, there's an obvious explanation for why he's trying to get in. It's not to beat anybody up. It's to steal money that he can use to sell, use to make a living. Any other questions? Thank you. Thank you, counsel. Ms. McClain. This is the fourth district's office day in the fifth district, I see. Please proceed, counsel. May it please the Court? Briefly on Argument 1, the evidence of other crimes and bad acts by the defendant was admitted in this case to show defendant's criminal intent, motive, and his hostility, showing him likely to do further violence, and that's what he did in this case. Also, that evidence of other crimes was admissible as part of the continuing narrative or coherent narrative of the event, giving rise to the effects. In this case, the other crime evidence consisted of a 2009 aggravated battery, burglary and attempts to force entry earlier the same day, the fight in the street the same day, evidence of drug use, evidence of earlier thefts from the residence, and prior threats to kill the boyfriend. So the State would maintain that all of that evidence was admissible in this case to show his intent and his motive and his hostility toward the boyfriend. In addition, the probative value of the other crime's evidence was not substantially outweighed by his prejudicial effect. The probative value was great. It showed defendant's intent and motive, and the trial judge was in the best position to determine what effect the evidence would have on the jury. The trial judge also instructed the jury of its limited purpose. The detail was necessary to fulfill the purpose for which the evidence was admitted. It rebutted the assertion that the boyfriend and mother were overreacting and that defendant did not want to injure them. And even in addition, the evidence without this other crime's evidence was overwhelming. Therefore, the other crime's evidence was not a material fact in the conviction. As for issue number two, the trial court properly exercises discretion in admitting the mother's entire interview with the police. The court used this discretion. The court admitted the video, adding that the video should be admitted because of the efforts that defendant's mother had gone to during her testimony to minimize and to take back everything she had told the police, even walking out of her way when leaving the stand to squeeze the defendant's shoulder in full view of the jury. The inconsistencies between the testimony and recorded statement were many. She testified that defendant lived with her, and she told the detective that defendant did not live with her. She testified that she had no problem with defendant stealing, and in her statement she said he had stolen from her lots of times. In her testimony, she did not remember telling the detective that she had to lock her door to keep defendant from stealing from her, and in her statement she said she locked her doors and windows because defendant had been getting inside and taking things. In her testimony, she said defendant never threatened to kill Don before. In her statement, defendant had previously threatened to kill Don. In her testimony, she could not remember if they locked the door that day, whether defendant was in the house when they returned, and whether he was holding a beer. In contrast, her statement, she had locked the door, defendant was inside when they returned, and he had a beer and was drunk. She testified that defendant did not take the screen door off the side door,  and I think most importantly, she testified that defendant was not really trying to get in, and that after the three shots, defendant reached through the door and tried to grab her boyfriend. In contrast, she told the detective that the emphasis was that defendant was trying to kill Don, not that Don threatened to shoot defendant, and that defendant had stuck his arm through the broken panes and tried to grab Don prior to any shots by Don. The case law holds that section 115-10.1 does not require a certain minimum amount of inconsistencies.  and showed her change of position and her evasiveness during trial. Therefore, it showed her demeanor, and that's what the jury needed to see, the contrast between her demeanor in her statement and her demeanor in court. There were critical inconsistencies, and her testimony was an attempt to legitimize defendant's actions and had a tendency to throw her boyfriend under the bus, and she even testified that her statement had been influenced by her being in the car with her boyfriend immediately prior to the interview. With the statement, the jury was able to view her demeanor and could weigh the difference between her testimony in trial and her demeanor during the interview. As for whether the court should have redacted the interview to take out anything, the request to redact was untimely. It was the final day of trial. Defense counsel had known as early as a few weeks prior, or over a month earlier, that the mother had given a secondary statement which differed from her interview. So defense counsel knew that the mother was taking back her interview statement. Does the record indicate, was there any discussion between the state's attorney and defense counsel that if she changes her story, we're going to want to play this tape or we're going to want to play parts of this tape? Was there any of that discussion that went on, do you know, or does the record indicate? I don't believe it indicates. I do know during her testimony when she started flipping and saying, oh, I'm not sure that's quite exactly true, I don't remember what I told the detective, you could tell that the prosecutor was going to try to get that statement in because she was completely contradicting everything she said in her statement. So you could tell during her testimony what the prosecutor was going to do, but I'm not sure if there's anything in the record that indicated that that would be an earlier thought by the prosecutor. Well, in the court in ruling, didn't the court express some concern about it's going to take some time to redact this 100-minute tape and I don't want to keep the jury waiting for a long period of time to go through this and to hear arguments back and forth, this stays in, this goes out? Yeah, I believe it was an act of the court's discretion to deny the request at that late of a time, you know, because it would hold the jury up who knows how long to take out. I mean, all the other crimes evidence which was admissible was in that statement. There was a lot of stuff in that statement, 100 minutes. And to follow up on my question I asked Mr. Andrews, there was no special instruction to the jury disregarding parts of this tape. Did the defendant ask for any special instruction to the jury other than the general instruction? I think there might have been an instruction about any references to him being in jail prior. I think there was an instruction on that. I don't think there was anything else. Anything on disregarding parts of this tape? Other than past times in jail. All right. If there are any other questions? No, thank you, counsel. A rebuttal argument. Very briefly. As far as whether there was any conversation between the defense counsel and the state's attorney before, there really couldn't have been because there was no way to know what needed to be edited. You couldn't have edited the tape before she testified. You can't take out the consistent statements without knowing what's consistent with her testimony and you can't leave in the inconsistent statements without knowing what's inconsistent. So they couldn't have worked this out a week before, a day before, a month before. Not at all. And the state points out that she made an inconsistent statement to the defense investigator a month or whatever before the trial. Again, it all depends on her testimony, not what she may have said outside of the courtroom, because it's inconsistent testimony. It's not inconsistent statements in general. As for the trial court's concern about the delay, you know, the same thing applies here. It's bad to delay the jury, but the state wants this evidence in. There was no previous time to edit it. The court's ruling, if it doesn't want to delay the jury, should have been to leave the recording out. And secondly, as I pointed out, that wasn't the only option. They could have gotten a detective in. They could have highlighted in the written statement the inconsistent parts that the state wanted to bring in. And as Ms. McClain says, you can tell the state knew what was inconsistent from its questioning. It was getting frustrated with Ms. Neely. So it would have been easy to highlight in this written statement the inconsistent testimony and say, Detective, did she tell you this? No, she told me that. Unless there are any other questions, I would simply ask that Mr. Nolman be granted a new trial. Thank you. Thank you, counsel. We will take this case under advisement. And the court will be in recess. All right.